IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MICHAEL PERRY                                                                                           PLAINTIFF

                v.                           Civil No. 4:07-cv-04013

LT MIKE GRAY, Hempstead
County Detention Facility                                                                           DEFENDANT

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Plaintiff, Michael Perry (hereinafter Perry), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Perry is currently incarcerated in the Arkansas Department of Correction. The events at issue in this lawsuit occurred when he was incarcerated at the Hempstead County Detention Facility. Perry contends Lt. Mike Gray violated his civil rights by using excessive force against him on December 29, 2006. Specifically, Perry maintains Gray violated his rights when he utilized pepper spray against him and then left him in his cell without allowing him to shower or clean off the spray.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation. On April 10, 2009, an evidentiary hearing was held. At the conclusion of the hearing, the case was taken under advisement and Plaintiff given a period of ten days to submit written questions to Shawn Garland who was hospitalized at the time of the hearing and unable to appear. Plaintiff has since advised the court (Doc. 81) that he does not desire to submit written questions to Garland and believes the record is complete.

## **1. Background & Evidence Presented**

Perry was booked into the Hempstead County Detention Facility (HCDF) on December 11, 2006, on theft of property, possession of instruments of crime, and criminal mischief charges. (Doc. 26) at Exhibit 1 (HCDF booking report); (Doc. 36) at ¶ 1(A).  In April of 2007, he was convicted. (Doc. 36) at ¶ 1(B).  He remained incarcerated at the HCDF until June 20, 2007, when he was transferred to the Arkansas Department of Correction (ADC).  (Doc. 26) at Exhibit 1.

At the evidentiary hearing, I heard the testimony of the following witnesses:  (1) Michael Perry; (2) Lt. Godbolt; (3) Officer Brandon Smith; (4) Officer Ryan Brown; (5) Shad Thompson; (6) Lt. Mike Gray; and (7) Sheriff Jerry Crane.  For purposes of discussion, I will summarize in the first person the testimony given at the evidentiary hearing.

*Michael Perry*

I am currently incarcerated at the Maximum Security Unit of the Arkansas Department of Correction (ADC).  I am thirty six years old.

The incident with Gray occurred on December 29, 2006.  I was locked up in the Hempstead County Jail in Hope, Arkansas.  I was placed in H pod.  In the past Officer Garland and I had words. It wasn't going to happen again.

I laid a blanket on the top of the door.  Garland came on the intercom and said take the blanket off the camera.  Lt. Gray and Officer Silva came back.  Smith and Brown were also there. They saw everything.  Ames didn't see what happened.  It occurred before his shift came on.

Gray came in and said something to me.  He snatched the blanket off the door.  I was sitting at the table.  As soon as Gray came in the door, he grabbed his mace out and sprayed me.  He

sprayed me at least three times. I tried to get up and run. I tried to turn my face to the wall. There was mace all over the wall.

Gray locked the shower door. Gray was getting ready to get off at the end of his shift. It was thirty or forty minutes to the end of shift. After Gray got off, Lt. Godbolt came in. I was still sitting at the table. It was at least thirty or forty minutes before I could take a shower. When Godbolt came on, I told him I needed a shower.

As a result of the spray being left on me so long, the top of my head was bleeding and my nose. My vision in my right eye is messed up. I'm still having problems with my eye. I'm going to the eye doctor next week. I had vision problems before this and wore contacts after I got out of high school. But the problems were not like the ones I have now. I didn't have contacts or glasses with me at the jail. I was trying to get glasses brought up there. The only time I wore contacts or glasses was when I read. The ADC won't allow contacts they are too expensive.

I have a hard time seeing documents. The light burns my eyes. I'm taking Tylenol #3 for pain in my eyes. My eyes burn.

I can read Gray's report, *Plaintiff's Exhibit* 5, but I never said "it would be a human sacrafice." If I had said that, those are serious words.

Plaintiff's Exhibit 2 is a report Dr. Louis Pearson, an eye doctor I went to see, wrote to the Sheriff's Department on March 5, 2007. The report says I was in an altercation and was struck in the right eye by a phone. I'm not sure how the doctor got that. I didn't say the problems with my eye were caused by being hit by a phone. When I was in the altercation with Gray, there was a phone on the wall.

*Lt. Godbolt*

I work for the Hempstead County Sheriff's Department.  On different occasions we have had inmates hang towels over the cameras.  You could hang a blanket over the camera.  After an inmate is sprayed, you decontaminate the inmate and then the inmate is returned to his cell.

On the day of the incident with Gray, when I came on Perry asked me to open the shower.  I have observed an inmate hang towels on the camera.  I have seen an inmate hang a blanket on the camera.  I was not present at the time of the alleged use of excessive force by Gray.

*Officer Brandon Smith*

I'm a lieutenant at the Hempstead County Detention Facility.  I was present on December 29, 2006.  When we entered H pod, Perry was at the table.  I was the last one to enter the pod.  When I entered, I didn't observe a blanket or towel covering the camera.  When I left the pod, Perry was still against the back wall by the table.  He was still trying to convince Gray to open the shower door.

*Officer Ryan Brown*

I'm currently an officer with the Hope Police Department, Patrol Division.  I was with the HCDF on December 29, 2006.  I was one of the first officers to enter the pod.

I was behind Gray.  Perry got up off the bench.  He was right behind the bench which is against the wall.  He had a towel in front of his face.

*Shad Thompson*

I was in the HCDF while waiting transport to the ADC.  I was sprayed at the HCDF for something I said.  I didn't use any kind of force.  Gray said he sprayed Perry for acting like a fool.

### *Lt. Mike Gray*

On December 29, 2006, I was a lieutenant with the Hempstead County Sheriff's Department. I was on duty that day.

Plaintiff's Exhibit 5 is the report I wrote that day. I wrote the report after the incident with Perry. The report accurately reflects the events of the day.

At 2:45 p.m. that day Garland told Perry to remove an object from the camera. He told Perry this over the intercom several times. Perry was told to remove the item. Perry said if anyone came down there it will be a human sacrifice.

When we went through the open door, Perry had sheets wrapped around his body and a towel around his face. He came up off the table when we came in. I had to act off his words. The door was stuck on the blanket. Perry had jammed both doors–the door to J pod and the door to H pod. I only sprayed him once. The blanket and towel were removed.

I told Godbolt about the incident. He had to unlock the shower. Until that afternoon, I had never had any problem with Perry.

After you spray an inmate, you are supposed to offer the person an opportunity to shower and wash his face. Perry had running water in his cell. The next shift gave him an opportunity to shower. The shift was changing. It could have been five minutes before the shift was changed and he was given an opportunity to shower.

I took Perry to the doctor several times. He said he had to see an eye doctor because of a problem with his eye. He never said he had damage to his eyes because of what I did. I heard Perry told Dr. Pearson he had been hit in the eye with a phone. I heard the other inmates talking about it. I heard Perry had been involved with an incident with a phone.

Plaintiff's Exhibit 5, Gray's report, provides as follows:

At approximately 14:45 Officer Garland called me from control with a problem from Inmate Perry. Inmate Perry was covering the video camera with a blanket in H-pod. I spoke to Inmate Perry via the intercom in control. He was told several times to remove the blanket from the camera. He responded saying that it would be a human sacrafice if someone came to H-pod to remove the blanket. I then left control headed to H-pod. As I opened the door to H-pod Inmate Perry had wrapped his face with a towel. He made an aggressive move twords me and I pepper sprayed him. I then removed the blanket from the camera and went back to the book-in area. I reported my actions to Lt. Godbolt of the oncoming shift and Sgt. Ames. My shift ended at 1500 and I left for the day. I instructed Lt. Godbolt inmate Perry would need a shower and that he had been causing trouble throughout our shift.

### *Sheriff Jerry Crane*

I am the Sheriff of Hempstead County. Shawn Garland was a jailer at the HCDF on December 29, 2006. He currently serves as a bailiff at the courthouse.

He cannot be here to testify today because he is hospitalized. He has diabetes and has already lost one leg. He is undergoing a medical technique on his leg and has been in the hospital for a week.

### **2.  Discussion**

It is clear the state has no right to punish pretrial detainees. *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)(*citing Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979)). Excessive force claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fifth and Fourteenth Amendments. *See Johnson-El*, 878 F.2d at 1048-49. The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *See Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The

evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *See Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

In this case, Perry contends the application of the pepper spray to him constitutes the use of excessive force. Courts, including the Eighth Circuit, have concluded that "a limited application of [non-lethal chemical agent] to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force." *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)(discussing cases from a number of jurisdictions holding the use of chemical agents did not constitute cruel and unusual punishment if reasonably necessary to maintain security and order or subdue a recalcitrant prisoner). The Eighth Circuit also noted that when "[u]sed in such manner and purpose, its application should 'rarely be a proper basis for judicial oversight.'" *Jones*, 207 F.3d at 496. *But see Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002)("Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions. The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary, or malicious.")

In *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006), the court considered factors including whether the actions of the officers were defensive in nature or motivated by anger; whether the actions were necessary to maintain order or were excessive reactions by frustrated officers; and whether the amount of force used was commensurate with the situation. *Id.* The court noted additional material issues included whether or not the Plaintiff failed to comply with orders given by officers in the cell, whether the Plaintiff was actively resisting them, whether verbal orders or the application of less force would have been sufficient, whether or not a warning issued before the application of the pepper spray, and whether the Plaintiff suffered real injuries. *Id.*

I find Perry failed to prove by a preponderance of the evidence that Gray used excessive force against him in utilizing the pepper spray. It is undisputed that Perry was verbally told first by Garland and then by Gray to remove the blanket or sheets from the camera. Although Perry denies that the items were hanging on the camera, he does not dispute the fact that he was involved in a verbal exchange with Garland and Gray and told multiple times to remove the items from where he had them. It is also undisputed that as Gray entered the cell Perry got up from the table. While Perry states he was attempting to run or get away because he saw Gray had his spray out, the action could reasonably be interpreted by Gray as being aggressive or threatening. Under the particular circumstances of this case, it was objectively reasonable for Gray to view Perry as recalcitrant or threatening and therefore use some amount of force to gain control of Perry. *See e.g., Treats v. Morgan*, 308 F.3d 868, 873-874 (8th Cir. 2002)(discussing relevant cases and when an inmate an

inmate is regarded as recalcitrant or threatening); *Thompson v. Zimmerman*, 350 F.3d 734 (8th Cir. 2003)(considering whether plaintiff was resisting or endangering himself or others).

### 3.  Conclusion

For the reasons stated, I recommend that judgment be entered in the Defendant's favor and the complaint be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **11th day of May 2009.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE